Ex parte Jerry Joe McMANUS, Relator.

No. 20198.

Court of Civil Appeals of Texas, Dallas.

Oct. 10, 1979.

Douglas A. Barnes, Herbert L. Hooks, Dallas, for relator.

Diane L. Snyder, Dallas, for respondent.

Before AKIN, ROBERTSON and STOREY, JJ.

ROBERTSON, Justice.

Relator Jerry Joe McManus brings this original application for a writ of habeas corpus, contending that the contempt order subject to which he is confined, is void. This contention is based on the grounds that enforcement of the order amounts to imprisonment for debt, that he was not identified at trial as respondent's former husband, that no showing was made that he had failed to make proper support payments, and that the divorce decree upon which the contempt order is based is ambiguous. We hold that the order is not void and therefore deny the application.

Relator and respondent, Sharon McManus, were divorced on August 9, 1977, by a decree which, among other provisions, or-

dered relator to pay for the support of the parties' two minor children. A show-cause order was issued on June 18, 1979, ordering relator to appear and to show why he should not be found in contempt for violating the decree of divorce. Relator did not testify at the contempt hearing. Subsequently, the district court found relator in contempt and entered a contempt order. Three days later a notice was issued to the sheriff to take relator into custody. Having been taken into custody, relator now challenges the validity of the contempt order through this collateral attack.

▉ Relator first contends that section 18 of article I of the Texas Constitution, prohibiting imprisonment for nonpayment of debts, would be violated by enforcement of that portion of the contempt order requiring payment of attorney's fees. The general rule in Texas is that attorney's fees awarded and included in a final judgment may not be collected through the use of contempt proceedings. *Wallace v. Briggs*, 162 Tex. 485, 489, 348 S.W.2d 523, 525–26 (1961); *Ex parte Choate*, 582 S.W.2d 625, 628 (Tex.Civ.App.—Beaumont 1979, no writ). One exception to this rule, however, exists in suits to recover child-support payments. Texas Rule of Civil Procedure 308–A allows an attorney's fee to be taxed as part of the cost in an action to enforce child-support orders. In *Ex parte Helms*, 152 Tex. 480, 259 S.W.2d 184 (1953) the Texas Supreme Court had this contention squarely before it and held that the constitutional right to not be imprisoned for debt is not violated by a contempt order enforcing a child-support judgment which includes an award of attorney's fees. *Id.* at 486, 259 S.W.2d at 188; *see Ex parte Myrick*, 474 S.W.2d 767, 771–72 (Tex.Civ.App.—Houston [1st Dist.] 1971, no writ). The reasoning behind this exception is that public policy imposes an obligation upon parents to support their children. Rather than view this obligation as a debt, public policy considers it a legal duty of the parents. Allowances for attorney fees and costs to enforce this duty are of the same nature as the allowances of support for which they are a necessary means of enforcement.

Consequently, they are not considered a debt. *Ex parte Helms*, 152 Tex. at 486, 259 S.W.2d at 188.

▉ The granting of attorney's fees also is challenged by relator on due process grounds in that a contemner does not know what the liquidated amount of such fees will be until the contempt order is entered. Relator contends that if a contemner is immediately bound over to the sheriff without an opportunity to purge himself, due process is offended. We disagree. Respondent's motion for contempt included a prayer for reasonable attorney's fees and costs. This placed relator on notice that reasonable attorney's fees and costs could be included in the court's order. At the hearing evidence was presented concerning attorney's fees and relator chose not to object to it. Thus, no evidence was taken to indicate that the attorney's fees awarded were not reasonable. Neither attorney's fees nor costs can be alleged with specificity at the time pleadings are originally filed. Of necessity, therefore, these fees and costs can be determined only at the contempt hearing. Indeed, these sums are often dependent upon the acts of the alleged contemner at, or prior to, the hearing. Since relator had notice that reasonable attorney's fees were prayed for and he did not object to the testimony concerning the reasonableness of those fees, due process was not offended.

▉ Relator next relies on *Ex parte Harris*, 581 S.W.2d 545 (Tex.Civ.App.—Fort Worth 1979, no writ) as requiring that a contemner present in court must be identified by the former wife as her former husband, in order to make a case against the contemner. Respondent in the present case did not identify relator as her former husband at the hearing on the motion for contempt, and relator therefore contends that the contempt order is void. We disagree. The United States Supreme Court stated in *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1947) that:

> [e]xcept for a narrowly limited category of contempts, due process of law . . requires that one charged with contempt

of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.

*Id.* at 275, 68 S.Ct. at 508–09, 92 L.Ed. at 695. Thus, when suitable notice and opportunity to appear and be heard has been given, presence of the alleged contemner is not required to satisfy due process. *See Blackmer v. United States,* 284 U.S. 421, 440, 52 S.Ct. 252, 256, 76 L.Ed. 375, 384 (1932). Requiring identification of the alleged contemner at the contempt hearing is logically inconsistent with the fact that he is not required even to attend the proceeding. Relator was given notice of the hearing on the motion for contempt, was served with a copy of the motion, was ordered to appear and to show cause why he should not be held in contempt, was afforded opportunity so to do, and was represented by counsel. As a result, relator's constitutional rights were protected, and a case was made out against him. *See In re Oliver,* 333 U.S. at 275, 68 S.Ct. at 508–09, 92 L.Ed. at 695; *Cooke v. United States,* 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767, 774 (1925). *See generally* Goldfarb, *The Constitution and Contempt of Court,* 61 Mich.L.Rev. 283 (1962). Relator was not bound over to the sheriff on the basis of his presence at the hearing, but rather by some other means of identification by the sheriff several days after entry of the contempt order. If the wrong "Jerry Joe McManus" had been taken into custody at that time, his remedy would have been by writ of habeas corpus challenging that action rather than the contempt order. We are not willing to engraft a new requirement of identification of the contemner at every stage of contempt proceedings. Consequently, we disagree with *Ex parte Harris* and decline to follow it.

█ Relator further argues that no evidence was admitted at the contempt hearing to show that he did not pay support, but simply that respondent did not receive it. At that hearing, however, respondent testified that she did receive payments each month, but that those payments were not in the proper amount. We find, therefore, that legally sufficient evidence did exist to support the district court's finding that relator failed to comply with the support order.

█ Part of the divorce decree that relator was alleged to have violated reads as follows:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that JERRY JOE McMANUS pay child support in the sum of $300.00 per month per child. The first payment shall be due on the 19 day of August, 1977 and a like sum each month thereafter until the children reach the age of 18 years.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all payments are to be made through the Dallas County Child Support Office, Room 111, Old Courthouse, P. O. Box 5530, Dallas, Texas.

Relator contends that this provision is vague in that it does not indicate to whom payment is to be made, exactly when payments, other than the first, are due, the amount which is due for each payment, and for how long payments are to be made. We do not agree with this contention. The first three items are clear and specific, and require no explanation. Until the oldest child attains eighteen years of age, there also will be no ambiguity as to the fourth item. *See Ex parte Slavin,* 412 S.W.2d 43, 44 (Tex.1967). Since neither of the parties' children has yet attained age eighteen, the divorce decree, when read as a whole, is not ambiguous, but is clear and specific. While a decree, to be enforceable through contempt proceedings, must delineate the requirements for compliance in clear, specific and unambiguous terms, *id.,* it need not be full of superfluous terms and specifications adequate to counter any flight of fancy a contemner may imagine in order to declare it vague.

In light of the foregoing, relator's application for a writ of habeas corpus is denied, and he is remanded to the custody of the

Sheriff of Dallas County in accordance with the order of the district court.